## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| _____ ) | |
| JAMIE TERRY, individually and ) | |
| and on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | |
| v. ) | |
| ) | |
| LEONARDO TRANSPORTATION, ) | |
| INC., BELLA VILLA TRUCKING ) | |
| INC., and DRAGAN GJUROVSKI, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

1.      Defendant Leonardo Transportation, Inc. ("Leonardo Transportation") is a motor carrier that transports general freight for its customers, located in Darien, Illinois.

2.      Defendant Bella Villa Trucking Inc. ("Bella Villa") is a company that, *inter alia*, leases trucks to Leonardo's drivers.

3.      Defendant Dragan Gjurovski is the President and Chief Executive Officer of both Leonardo and Bella Villa (collectively referred to as "Defendants").

4.      Plaintiff Jamie Terry is a former driver for Defendants, who bring this action both individually and on behalf of all others similarly situated in order to challenge the following unlawful practices of Defendants: misclassifying drivers as independent contractors when they are, in fact, employees; failing to pay all wages

owed to drivers; taking unlawful and excessive deductions from drivers' wages; and failing to reimburse drivers for expenses.

5.     Mr. Terry and the putative class of similarly situated drivers allege that Defendants' unlawful practices described in this complaint deprived them of wages owed to them in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/9.

6.     Mr. Terry and the putative class of similarly situated drivers also allege that Defendants' unlawful practices described in this complaint are in violation of 49 U.S.C. § 14102 and its regulations, referred to hereinafter as the Truth-in-Leasing regulations.

**PARTIES**

7.     Plaintiff Jamie Terry ("Terry") is an adult resident of Clayton County, Georgia.  He was employed by Defendants as a driver from approximately October 2020 until approximately August 2022.

8.     Plaintiff Terry brings this action on behalf of a putative class of similarly situated individuals, namely: "all persons who have driven for Defendants and have performed work in the State of Illinois for Defendants during the relevant statutory period."

9.     Plaintiff and the members of the putative class are "employees" of Defendants within the meaning of the IWPCA.

10.     Plaintiff and those members of the putative class who leased their trucks from Bella Villa while leasing those trucks back to Leonardo Transportation are

"lessors" and "owners" within the meaning of the Truth-in-Leasing regulations, 49 C.F.R. § 376.2.

11.     Defendant Leonardo Transportation, Inc. ("Leonardo"), is an Illinois corporation headquartered in DuPage County, Illinois.  Leonardo does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

12.     Defendant Bella Villa Trucking Inc. ("Bella Villa") is an Illinois corporation headquartered in DuPage County, Illinois.  Bella Villa does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

13.     Defendant Dragan Gjurovski is an Illinois resident and is the President and Secretary of both Leonardo and Bella Villa. Gjurovski possesses and exercises the authority to: make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them.

14.     Defendants jointly and severally are subject to the provisions of the IWPCA and are "employers" within the meaning of those statutes.

15.     Defendant Leonardo Transportation is an "authorized carrier" and a "lessee" within the meaning of the Truth-in-Leasing regulations, 49 C.F.R. § 376.2.

**JURISDICTION AND VENUE**

16.     This Court has federal question jurisdiction over Plaintiff's Truth-in-Leasing claims under 28 U.S.C. § 1331.

17.     This Court has supplemental jurisdiction over Plaintiff's IWPCA claims under 28 U.S.C. § 1367 because these claims are so related to the claim over which this

Court possesses original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution.

18.     The Court has personal jurisdiction over Defendants because Defendant Dragan Gjurovski resides in Illinois, Defendants Leonardo and Bella Villa are registered with the Illinois Secretary of State, Defendant Dragan Gjurovski is named as president of Leonardo and Bella Villa in its filings with the Illinois Secretary of State, Defendants do business in the State of Illinois, and Defendants have expressly consented to personal jurisdiction in the State of Illinois and this judicial district.

19.     The Court has personal jurisdiction over Plaintiff Terry and the putative class because they have worked in Illinois for an Illinois employer.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

## FACTUAL BACKGROUND

21.     Defendant Leonardo Transportation, Inc. is a trucking company with authority granted by the U.S. Department of Transportation ("USDOT") to transport property.  It employs drivers to transport its customers' freight in interstate commerce. Defendant Leonardo Transportation is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq*.

**A.     Facts Relating to Illinois Wage Payment and Collections Act (IWPCA) Violations**

4

22.     Defendant Leonardo Transportation operates out of an office located at 805 Plainfield Road, Unit 214 in Darien, Illinois.

23.     Defendants recruited and hired Plaintiff Jamie Terry as a "company driver" to provide transportation services to Defendants' freight customers in approximately September 2020.

24.     At the direction of Defendant Dragan Gjurovski, Terry left his home in Georgia and headed to Louisville, Kentucky to pick up an abandoned truck and drive it to Illinois, where he completed employment paperwork and was assigned a different truck by Gjurovski.

25.     On information and belief, Defendants lease a "yard" where out-of-service trucks are stored from a mechanic located in Burr Ridge, Illinois.

26.     Although Terry understood that he was being hired as a "company driver," i.e., as an employee, Defendants classified him as an independent contractor and paid him on a Form 1099 instead of a Form W-2.

27.     During his time working for Defendants as a "company driver," Terry received weekly pay stubs from an entity called Bella Villa Trucking Inc.

28.     These pay stubs identify the city and state of the shipper and the receiver for each load that Terry hauled for Defendants.

29.     Terry's paystubs demonstrate that the vast majority of his loads either originated in Illinois or were delivered to Illinois.

30.     Terry's work for Defendants brought him to Illinois at least once per week, either to pick up/deliver freight for Defendants, or because his truck needed to be serviced by Defendants' mechanic in Burr Ridge, Illinois.

31.     Terry's paystubs indicate that Defendants paid Terry as a "company driver" a mileage rate of sixty cents per mile, with numerous unauthorized deductions from Terry's pay.

32.     For example, Defendants deducted $100 from Terry's pay each week for 20 weeks toward an "escrow" account, which Gjurovski told Terry was a form of security, e.g., if the truck was damaged, then Defendants would use the escrow money for repairs.

33.     Defendants also deducted $163 per month from Terry's pay for occupational accident insurance.

34.     On information and belief, Defendants made similar deductions from the pay of other drivers characterized by Defendants as "company drivers."

35.     These deductions are not required by law.

36.     These deductions are not to the benefit of drivers.

37.     Drivers do not freely give express written consent at the time these deductions are made.

38.     Defendants do not receive proper authorization from drivers for these deductions.

39.     After driving for Defendants for a number of months, Terry told Gjurovski that he was going to leave to find other work because he wanted to make more money and he thought he could do so by getting his own truck.

40.     Gjurovski responded by telling Terry that if he stayed, Gjurovski would lease a truck to him and Terry could purchase it at the end of the lease.

41.     Terry said that he would not want to lease the truck he was currently driving because it had so many problems, to which Gjurovski responded that he would make sure the truck was fixed up for Terry.

42.     Gjurovski repeatedly told Terry that he wanted to "help" him.

43.     Effective April 1, 2021, Terry began driving for Defendants as an "owner-operator" in a truck that he leased from Defendant Bella Villa Trucking Inc.

44.     In order to lease a truck from Defendants, Terry was required to sign a standard-form contract with Bella Villa Trucking Inc. titled "Equipment Lease Agreement."

45.     The Equipment Lease Agreement required Terry to make weekly lease payments for a total of 104 weeks.

46.     Among other provisions, the Equipment Lease Agreement stated that, in the event that Terry failed to make even a single lease payment and failed to cure upon notice of default, Bella Villa could take possession of the truck, terminate the lease, and/or sue Terry for all remaining lease payments, interest, penalties, taxes, or other amounts payable under the agreement.

47.     These terms and all other terms of the contract with Bella Villa were presented to Terry on a take-it-or-leave-it basis with no opportunity for negotiation.

48.     On information and belief, Defendants required all of its "owner-operators" to enter into these same or similar agreements under the same or similar circumstances.

49.     When Terry was classified as an "owner-operator," Defendants claimed to pay Terry 88 percent of the "Freight Amount."

50.     Defendants, however, made numerous weekly deductions from Terry's gross pay, including deductions for fuel, cargo insurance in the amount of $300 per week, physical damage insurance in the amount of $90 per week, logbooks in the amount of $15 per week, truck lease payments in the amount of $442.10 per week, and trailer rent payments in the amount of $300 per week.

51.     Defendants also made deductions for occupational accident insurance in the amount of $163 per month.

52.     Defendants further made deductions totaling $2,000 per year for "registration."

53.     Defendants also charged Terry for tolls.

54.     On information and belief, Defendants made similar deductions from the pay of other drivers characterized by Defendants as "owner-operators."

55.     These deductions are not required by law.

56.     These deductions are not to the benefit of drivers.

57.     Drivers do not freely give express written consent at the time these deductions are made.

58.     Defendants do not receive proper authorization from drivers for these deductions.

59.     In May and June 2021, not long after he first began leasing a truck from Bella Villa, Defendants began making deductions from Terry's settlements for various repairs on the truck; these initial repair deductions totaled $3,651.28.

60.     On information and belief, these repairs were performed in Illinois by Defendants' mechanic in Burr Ridge.

61.     Despite Gjurovski's assurances, the truck that Defendants leased to Terry broke down numerous times.

62.     Defendants deducted all costs of towing and repairs from Terry's compensation.

63.      In September 2021 and October 2021, after the truck broke down, Defendants made large deductions from Terry's pay toward an item labeled "Repair bill," totaling $9,000.

64.     On information and belief, these repairs were performed in Illinois.

65.     In early December 2021, Terry was driving through Kentucky when he experienced a loss of power.

66.     The truck had to be towed to a shop, resulting in a repair bill of $8,830.44.

67. During the months of December 2021, January 2022, and February 2022, Defendants took deductions identified as being for "repairs" or "towing" totaling $15,112.73

68. After two months without any deductions for repairs, in May 2022, Defendants again began making large deductions from Terry's pay for repairs.

69. These deductions continued until Terry's last settlement with Defendants, which was in mid-August 2022.

70. Over the course of his lease with Bella Villa, Defendants deducted a total of $36,223.57 from Terry's pay for repairs, towing, and other related expenses.

71. In some weeks, deductions from Terry's pay resulted in a negative balance, which meant that not only did he fail to receive any compensation at all in those weeks, but the negative balance was also carried forward and deducted from his compensation in the following week.

72. Terry failed to receive any compensation for five weeks when he performed work for Defendants: March 17, April 21, May 12, July 21, and August 11, 2022.

73. On information and belief, Defendants made similar deductions for repairs from the pay of other drivers characterized by Defendants as "owner-operators."

74. These deductions are not required by law.

75. These deductions are not to the benefit of drivers.

76.     Drivers do not freely give express written consent at the time these deductions are made.

77.     Defendants did not receive proper authorization from drivers for these deductions.

78.     In fact, Defendants failed to obtain any authorization at all for most of these deductions.

79.     Although Terry was classified by Defendants as an allegedly "independent contractor," Defendants retained total control over Terry's work, making him economically dependent on Defendants.  For example:

    a.   Defendants retained exclusive authority to negotiate the rates and terms of load pay with Defendants' customers, including whether driver detention and layovers would be compensated;

    b.   Defendants' dispatchers determined which loads would be offered to Terry, with no opportunity for Terry to negotiate the load pay;

    c.   Defendants' dispatchers determined how long Terry needed to wait between loads, sometimes requiring him to wait as many as four days for his next load;

    d.   Defendants declined to provide Terry with access to the load board, which prevented him from comparing the offered loads with others that might be more lucrative;

    e.   Defendants did not allow Terry to book his own loads;

f.  Terry's financial success (or lack thereof) was entirely dependent on his dispatcher finding and offering him "good" loads;

g.  Defendants did not allow Terry to drive for other carriers during his tenure with Defendants; and

h.  Defendants required Terry to submit to a system whereby Defendants made deductions directly from his compensation for all amounts unilaterally determined by Defendants to be owed by Terry to Defendants or third-parties, including, but not limited to, deductions for truck repairs.

80.  Defendants also controlled and directed the performance of Terry's work. For example:

a.  Defendants effectively controlled Terry's schedule through load assignments and directives to return to Illinois for, *inter alia*, inspections, DOT physicals, and repairs;

b.  Defendants effectively controlled Terry's routes by determining all pick-up and drop-off times, load pay, and by requiring Terry to use Defendants' fuel card at particular fuel locations;

c.  Defendants' dispatchers closely monitored Terry's on-time status and called to check up on him if they thought he might be late to a delivery appointment;

d.  Defendants' dispatchers closely monitored Terry's hours-of-service logging for DOT and called him if they believed Terry was moving the

truck while out of driving hours or if he put himself in "Personal
Conveyance" status; and

e.  Defendants required him to submit his trip paperwork, including his
bills of lading, via WhatsApp to his dispatcher.

81.     On information and belief, all drivers classified by Defendants as
"independent contractors" were subject to the same types of control described in the
previous two paragraphs.

82.     Terry and the putative class members perform work – providing
transportation services to Defendants' customers – that is within the usual course of
business of Defendants.

83.     Terry and the putative class members do not have independently
established trades or businesses.

84.     Terry and the members of the putative class are paid through settlement
statements issued by Defendants.

85.     On information and belief, the amounts listed as "Freight Amount" on the
settlements sometimes included accessorial pay to which the 88% rate was applied, but
which should have been passed through in full to drivers.

86.     In this manner, Defendants fail to pay drivers all compensation owed to
them.

87.     Defendants require "owner-operators" to use Defendants' fuel card to
purchase fuel, which is then deducted from drivers' wages through payroll deductions.

88.     On information and belief, Defendants have retained fuel discounts, including at-the-pump fuel discounts, for themselves and have not passed those along to their "owner-operators," which means that Defendants have deducted more for fuel from their drivers' wages than Defendants actually paid for fuel.

89.     Defendants also fail to reimburse drivers for tolls and other necessary expenditures and losses required of drivers in the discharge of their employment duties that inure to the primary benefit of Defendants.

**B.     Facts Relating to Truth-in-Leasing Regulations ("TIL") Violations**

90.     Defendant Leonardo Transportation is a "motor carrier" and an "authorized carrier" under the Truth-in-Leasing regulations.

91.     Under the TIL regulations, Leonardo was required to have a written lease that clearly specified the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, loading and unloading property onto and from the truck (and the compensation, if any, to be paid for this service).

92.     Defendant Leonardo Transportation failed to specify these responsibilities in a written lease.

93.     Under the TIL regulations, Leonardo Transportation was required to disclose in a written lease all expenses that the carrier would "charge back to the operator."

94.     Defendant Leonardo Transportation failed to make these required disclosures in a written lease.

95.     Defendant Leonardo Transportation made numerous deductions from Terry's pay that were not disclosed in a written lease with Leonardo, including but not limited to: deductions for fuel, tolls, cargo, physical damage insurance, logbooks, truck lease payments, trailer rent payments, occupational accident insurance, registration, and repairs.

96.     Defendant Leonardo Transportation charged back the cost of fuel to Terry without disclosing that it would retain discounts, including at-the-pump discounts, for itself.

97.     Under the TIL regulations, Leonardo was required to disclose in a written lease the amount that it would pay Terry as compensation and to specify that it would provide Terry with a copy of the rated freight bills upon which his compensation was based, either before or at the time of settlement.

98.     Defendant Leonardo Transportation failed to make these required disclosures, and further failed to disclose that amounts listed as "Freight Amount" on the settlements sometimes included accessorial pay to which the 88% rate was applied, instead of being passed through in full to Terry.

99.     Defendant Leonardo Transportation also failed to provide Terry with a copy of the rated freight bills upon which his compensation was based.

100.    Under the TIL regulations, Leonardo was required to specify in a written lease its legal obligation to maintain insurance coverage for the protection of the public and to specify which party is responsible for providing any other insurance coverage;

moreover, the amounts of any chargebacks made by Leonardo Transportation for insurance must be specified in the lease.

101.    Defendant Leonardo Transportation failed to disclose chargebacks for insurance that were automatically deducted from Terry's pay, nor did it disclose how the amounts it charged for insurance were determined.

102.    On information and belief, the amounts actually deducted by Leonardo for "PD insurance" included undisclosed chargebacks.

103.    Under the TIL regulations, Leonardo was required to specify in a written lease agreement that it would provide Terry with a certificate of insurance for each policy purchased from or through Leonardo, and that Terry could request a copy of the actual policy.

104.    Defendant Leonardo Transportation failed to make any such specification and further failed to provide Terry with a certificate of insurance for all policies he "purchased" from or through Leonardo.

105.    In these ways, Defendant Leonardo Transportation did not adhere to the terms of its lease agreements with its drivers and violated the Truth-in-Leasing regulations.

106.    Terry was harmed by these violations of the Truth-in-Leasing regulations because, *inter alia*,

> a.  he was denied the opportunity to assess the financial consequences of entering into a lease arrangement with Leonardo prior to doing so;

b.  he was required to pay (through automatic deductions from his settlements) for numerous chargebacks that Leonardo did not disclose to him in a written lease and for which Terry should not have been required to pay;

c.  he was prevented from contesting underpayment of his compensation by Leonardo's failure to provide him with copies of rated freight bills;

d.  he was prevented from contesting overpayment of insurance premiums by Leonardo's failure to provide him with all certificates of insurance and failure to inform him in writing of his right to view a copy of the insurance policies for which he was charged.

## CLASS ALLEGATIONS

107.    Plaintiff Terry brings this lawsuit against Defendants as a class action pursuant to Fed. R. Civ. P. 23 class action for and on behalf of the following classes, for which Plaintiff seeks certification:

For the IWPCA claim, all persons who performed work in the State of Illinois for Defendants during the relevant statutory period.

For the Truth-in-Leasing claim, all persons who drove for Defendant Leonardo Transportation as an "owner-operator" during the relevant statutory period.

108.    This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

109.    The class is so numerous that joinder of all potential class members is impracticable.  On information and belief, the class is comprised of at least two hundred

drivers. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants.

110.    There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants have misclassified drivers as independent contractors; whether Defendants have failed to pay drivers promised wages; whether Defendants have taken unlawful deductions from drivers' wages; and whether Defendant Leonardo Transportation adhered to its obligations under the Truth-in-Leasing regulations.

111.    The class claims asserted by Plaintiff are typical of the claims of potential class members. Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers. Plaintiff Terry's and all class members' claims for unpaid wages and unlawful deductions should be readily calculable from Defendants' business records.

112.    Plaintiff Terry will fairly and adequately protect and represent the interests of the class. His interest in challenging the unlawful practices of Defendants motivates him to bring this case as a class action. Plaintiff Terry specifically sought out the undersigned counsel, who are experienced in wage and hour litigation and class actions generally as well as in the trucking industry.

113.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial

18

economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants. Moreover, some class members particularly current drivers may be reluctant to bring their claims individually for fear of retaliation by Defendants.

114.    Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA and the Truth-in-Leasing regulations to drivers, whose individual claims may be too small to warrant the expense of litigation.

115.    This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

116.    The contours of the class will be easily defined by reference to business records kept by Defendants.

**CLAIMS FOR RELIEF**

**COUNT I:**
**ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
**(Class Claims)**

117.    Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

118.    Plaintiff asserts this claim on behalf of himself and the Rule 23 class.

19

119.    Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/1 by failing to pay Plaintiff and the Rule 23 class all wages earned.

120.    Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/9 by taking unlawful deductions from the wages earned by Plaintiff and the Rule 23 class.

121.    Defendants violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5 by failing to reimburse Plaintiff and the Rule 23 class for tolls and other necessary expenditures and losses required of drivers in the discharge of their employment duties that inure to the primary benefit of Defendants.

122.    Plaintiff and the Rule 23 class seek recovery of their unpaid wages, reimbursement for unlawful deductions, reimbursement for out-of-pocket expenses, liquidated damages, and attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a).

## COUNT II:
## TRUTH-IN-LEASING CLAIMS
### (Class Claims Against Leonardo Transportation)

123.    Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

124.    Defendant Leonardo Transportation is a motor carrier with operating authority granted to it by the U.S. Department of Transportation.

125.    Under the Truth-in-Leasing regulations, an authorized carrier may perform authorized transportation using leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

126.     Those regulations require an authorized carrier to disclose all "chargebacks" to be made by the carrier in the written lease. *Id*. § 376.12(h).

127.     Additionally, under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id*. § 376.12 (introductory paragraph).

128.     Defendant Leonardo Transportation made chargebacks to Terry and other "owner-operator" drivers, even though those chargebacks were not disclosed in a lease.

129.     Defendant Leonardo Transportation failed to disclose the amount that Terry was to be paid in a written lease, the method by which Terry's compensation would be calculated, and also failed to provide Terry with rated freight bills before or at the time of settlement.

130.     Defendant Leonardo Transportation made unlawful deductions from the pay of Terry and other drivers relating to insurance and otherwise did not comply with the requirements relating to insurance in the Truth-in-Leasing regulations.

131.     Pursuant to 49 U.S.C. § 14704(a), Defendant Leonardo Transportation is liable to Terry and other "owner-operator" drivers for the damages that they suffered on account of Leonardo Transportation's regulatory violations.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

a.     Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

b. Appointing Plaintiff Jamie Terry as class representative and his counsel as class counsel;

c. An order enjoining Defendants from violating the IWPCA;

d. All unpaid wages;

e. Restitution for all deductions taken from class members' wages;

f. Restitution for all Defendants' operating expenses that class members were forced to bear;

g. An award to Plaintiffs and the Rule 23 class of damages, liquidated damages and penalties pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

h. Attorneys' fees and costs, pursuant to 820 Ill. Comp. Stat. 115/14(a);

i. Requiring Defendant Leonardo Transportation to provide each of the drivers an accounting of all transactions with Leonardo Transportation and provide all documentation necessary to confirm the validity of the computations;

j. A judgment against Defendant Leonardo Transportation for all damages that the drivers incurred as a result of its violations of the Truth-in-Leasing regulations, including, but not limited to, restitution for all improper deductions and chargebacks made, all amounts not paid as compensation pursuant to the agreed-upon rate, all undisclosed insurance chargebacks, and all other damages suffered;

k. Pre- and post-judgment interest;

l. Attorneys' fees and costs, pursuant to 49 U.S.C. § 14704(e);

m.      Any other relief as this Court deems just and proper.

Respectfully submitted,

JAMIE TERRY, individually and on behalf all others similarly situated,

By their attorneys,

/s/ Bradley Manewith
Bradley Manewith, #6280535
Marc J. Siegel, #6238100
James D. Rogers, # 6324570
SIEGEL & DOLAN LTD.
150 North Wacker, Suite 3000
Chicago, Illinois 60606
Tel: (312) 878-3210
Fax: (312) 878-3211
banewith@msiegellaw.com
msiegel@msiegellaw.com
jrogers@msiegellaw.com

Hillary Schwab
*Pro hac vice application forthcoming*
Rachel Smit
*Pro hac vice application forthcoming*
Brant Casavant
*Pro hac vice application forthcoming*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
Email: hillary@fairworklaw.com,
rachel@fairworklaw.com,
brant@fairworklaw.com

Dated: September 12, 2022